# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK MORGENFRUH, | No. 4:18-CV-00021 |
| Plaintiff, | (Judge Brann) |
| v. | |
| LARSON DESIGN GROUP, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### SEPTEMBER 19, 2019

This is an employment discrimination case brought under Title VII, the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA), and the Family and Medical Leave Act (FMLA).[1] Defendant Larson Design Group, Inc. ("Larson"), moved for summary judgment on all counts. That motion is granted.

## I. BACKGROUND[2]

Mark Morgenfruh, the plaintiff, was employed by Larson as its Vice President of Human Resources from 2013 to 2017.[3] During his term of employment, Morgenfruh coped with a variety of medical conditions. The conditions Morgenfruh

---

[1] Plaintiff withdrew a claim of genetic discrimination. *See* Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J. 3, ECF No. 44. I therefore grant summary judgment to Defendant on that claim.

[2] The facts described below are either undisputed or, where disputed, found in the nonmovant's favor as is appropriate on a motion for summary judgment.

[3] Pl. Dep. 14:3–6, 32:19–21, ECF No. 36 #1.

claims[4] as protected disabilities under the ADA are listed in Table 1 alongside the approximate date he informed Larson of the claimed disability.

TABLE 1

| Irritable bowel syndrome (IBS) | Early 2013[5] |
|---|---|
| High blood pressure | 2014[6] |
| Degenerative disc disease | 2015[7] |
| Chronic obstructive pulmonary disease (COPD) | 2015 or early 2016[8] |
| Type II diabetes | April or May 2017[9] |
| Sleep apnea | April or May 2017[10] |

Morgenfruh attended a total of twenty-five appointments between March 18, 2013 (his start date), and March 28, 2017.[11] He continued attending doctor's appointments in 2017.[12]

---

[4] *See* Pl. Mem. 6–7.

[5] Pl. Dep. 61:21–22.

[6] *Id.* 115:8–15.

[7] *Id.* 96:3–5.

[8] *Id.* 102:17–103:8.

[9] *Id.* 68:5–69:25.

[10] *Id.* 89:7–24.

[11] Morgenfruh's Medical Records, ECF No. 36 #12.

[12] Pl. Dep. 46:23–25.

Generally, Larson had an accrued leave policy.[13] As of January 1, 2017, Morgenfruh had accrued 120 hours of vacation time, 81.74 hours of sick time, and 8 hours for a personal day.[14] In addition to his standard accrued leave, Morgenfruh had a flexible schedule that permitted him to leave work early or arrive late to attend doctor's appointments.[15] In fact, Morgenfruh was never denied authorization to leave work for a medical appointment.[16] Keith Kuzio, Larson's CEO and Morgenfruh's supervisor, also approved Morgenfruh for a half day of vacation on May 30, 2017, and a full day of vacation on May 31, 2017, to give Morgenfruh a longer Memorial Day weekend.[17]

Two years prior, Larson contracted with TalentKeepers, a firm specializing in assessing employee engagement and retention, to evaluate engagement within the company.[18] The first evaluation was conducted in February 2015.[19] The second evaluation was conducted in November 2016, and the scores were published around

---

[13] *Id.* 37:13–19.

[14] Rogers Aff., ECF No. 36 #23.

[15] Pl. Dep. 48:16–24.

[16] *Id.* 47:8–15.

[17] Timesheet, ECF No. 36 #18; Kuzio Dep. 22:1–4, ECF No. 36 #6.

[18] Kuzio Dep. 75:22–76:6.

[19] *Id.* 76:14–16.

January 2017.[20] The employee engagement scores from the second survey were generally lower than the February 2015 scores.[21]

Kuzio fired Morgenfruh on June 30, 2017.[22] Kuzio was responsible for the decision.[23] Kuzio then made the decision to hire Terry Krezmer, a nondisabled woman, to replace Morgenfruh.[24] Krezmer had over twenty years of experience working in human resources and had previously worked as the global head of human resources for Lonza, a chemical manufacturer.[25]

Larson employed significantly more men than women in middle management roles during Morgenfruh's tenure.[26] Larson had an affirmative action plan that complied with relevant state and federal laws,[27] and the company also had a women's career-development group called "Women of LDG."[28] Brenda Nichols, one coworker of Morgenfruh's, expressed a desire to see more women work at Larson.[29]

---

[20] *Id.* 80:3–9.

[21] *Id.* 80:25–81:4.

[22] Pl. Dep. 398:21–399:3.

[23] Nichols Dep. 90:6–8, ECF No. 36 #3.

[24] *Id.* 107:20–108:2.

[25] Krezmer Dep. 7:5–11, 8:1–4, ECF No. 36 #4.

[26] Pl. Dep. 213:7–12; Affirmative Action Plan 5, ECF No. 36 #9.

[27] Pl. Dep. 214:20–24.

[28] Nichols Dep. 110:13–17.

[29] Pl. Dep. 209:13–17.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[31] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the nonmoving party.[32]

To defeat a motion for summary judgment, the nonmoving party must point to evidence in the record that would allow a reasonable jury to rule in that party's favor.[33] "When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[34] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[35] On a motion for summary judgment, "the

---

[30] Fed. R. Civ. P. 56(a).

[31] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[32] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[33] Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 249.

[34] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002).

[35] Fed. R. Civ. P. 56(e)(2).

court need consider only the cited materials, but it may consider other materials in the record."[36]

## B. Discrimination[37]

Discrimination claims under Title VII and the ADA apply the *McDonnell Douglas* burden-shifting framework.[38] In a *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case; second, the defendant must articulate some legitimate, nondiscriminatory reason for the employment action; and, third, the plaintiff must then prove that the defendant's proffered reason was a pretext for discrimination.[39]

In order to establish a *prima facie* case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position

---

[36] Fed. R. Civ. P. 56(e)(3).

[37] In this memorandum opinion I refer only to Title VII and the ADA and not the PHRA. "It is well-settled that [gender discrimination] 'claims under the PHRA are interpreted coextensively with Title VII claims.'" *Rorke v. Toyota*, Civ. No. 16-219, 2019 WL 3002973, at *11 (M.D. Pa. July 10, 2019) (quoting *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006)). The ADA and the PHRA were interpreted coextensively for disability discrimination claims prior to the enactment of the ADA Amendments Act (ADAAA) in 2008, *see Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996), but neither the Pennsylvania Supreme Court nor the Third Circuit has provided guidance on whether the PHRA continues to be coextensive following the ADAAA's expansion of qualifying disabilities. *For further discussion, see Myatt v. Village*, Civ. A. No. 19-130, 2019 WL 2288116, at *1 n.5 (E.D. Pa. May 29, 2019); *Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 428 (W.D. Pa. 2014). At least one Pennsylvania court has determined that they do. *See Lazer Spot, Inc. v. Pa. Human Relations Comm'n*, No. 459 C.D. 2017, 2018 WL 670621, at *4–5 (Pa. Commw. Ct. Feb. 2, 2018). For purposes of this motion, I assume that they remain coextensive. To the extent they are not, I find there are issues of material fact as to whether the disabilities qualify, but I nonetheless grant summary judgment to Larson on the same grounds as the ADA claims.

[38] *See Rorke*, 2019 WL 3002973 at *12 (Title VII); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 n.12 (3d Cir. 2017) (ADA).

[39] *See Rorke*, 2019 WL 3002973 at *12.

she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."[40] For Title VII cases, a protected plaintiff who is qualified for his job may establish a *prima facie* case by showing that he was fired and replaced by a person who is a member of the opposite gender.[41] In ADA cases, a plaintiff who is qualified for his job and meets the statutory definition of disabled under the ADA can also establish his *prima facie* case by showing that he was fired and replaced by someone who is not a member of his protected class—namely, someone who does not meet the statutory definition of disabled under the ADA.[42]

Morgenfruh establishes a *prima facie* case under Title VII. The fact that he was replaced by a woman is sufficient at this stage to satisfy the fourth element, which is the only one disputed by Larson.[43]

On his ADA claim, Larson contests both the first and fourth elements. Morgenfruh may show that he is disabled within the meaning of the ADA in three ways: (1) he actually has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual"; (2) he has a "record of

---

[40] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[41] *See Tenthoff v. McGraw-Hill, Inc.*, 808 F. Supp. 403, 406 (E.D. Pa. 1992); *Sampath v. Concurrent Techs. Corp.*, No. 3-264, 2008 WL 868215, at *34 n.32 (W.D. Pa. Mar. 31, 2008).

[42] *See Latch v. Se. Pa. Transp. Auth.*, 984 F. Supp. 317, 320 (E.D. Pa. 1997).

[43] *Stahlnecker v. Sears*, Civ. A. No. 08-681, 2009 WL 661927, at *4 (E.D. Pa. Mar. 11, 2009).

such impairment"; or (3) he is "regarded as having such an impairment."[44] Although Morgenfruh claims that he qualifies under all three in his complaint, he has abandoned the latter two in his summary judgment papers. I address only the first. Larson does not argue that Morgenfruh's claimed disabilities are not the *type* of disabilities protected by the ADA[45] nor that he does not actually have them. Rather, it argues that Morgenfruh did not notify Larson of his sleep apnea and type II diabetes diagnoses. But at his deposition, Morgenfruh stated that he told Larson that his doctors suspected he had those conditions.[46] For purposes of summary judgment, I find that this creates an issue of material fact.

For the fourth element, as with his Title VII claim, Morgenfruh's demonstration that Krezmer is not disabled is sufficient, and I find he has stated a *prima facie* claim of disability discrimination under the ADA.

Morgenfruh advances two additional theories of liability under the ADA: failure to accommodate and retaliation. To establish a *prima facie* case for failure to accommodate, "a disabled employee must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to

---

[44] 29 C.F.R. § 1630.2(g)(1).

[45] Larson does dispute whether his disabilities qualify under the PHRA's definition. As discussed in note 37, *supra*, I assume that the PHRA's definition is coextensive with the ADA's, and to the extent it differs, there is an issue of material fact.

[46] Pl. Dep. 90:16–23, 69:23–25.

assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith."[47] For a *prima facie* case of retaliation, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[48]

Morgenfruh posits that Larson's failure to provide him with a flexible schedule to attend his medical appointments was a failure to accommodate and that his firing after requesting one was retaliation. However, the evidence in the record all suggests that Morgenfruh already had the flexible schedule he needed. Larson allowed him to leave work early or arrive late as necessary. He had unused flexible leave time. And, whenever he requested time off to attend to a medical issue, he was never denied it. Morgenfruh has not identified evidence showing that Larson failed to provide a reasonable accommodation or that his requests had any causal connection to his termination, and thus he has not established *prima facie* cases on these two theories.[49]

I now move to the second step of the *McDonnell Douglas* analysis. Larson responds that Morgenfruh was fired as a result of his poor performance on the

---

[47] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999).

[48] *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002).

[49] *See Strausser v. Gertrude Hawk Chocolate, Inc.*, No. 15-2458, 2018 WL 1470796, at *7 (M.D. Pa. Mar. 26, 2018).

TalentKeepers employee-engagement and people-development metrics.⁵⁰ This is a valid nondiscriminatory reason for termination of employment, and the burden shifts back to Morgenfruh to demonstrate that it is pretext for either gender or disability discrimination.

To do so, Morgenfruh must either discredit the proffered reason or adduce evidence, circumstantially or directly, that discrimination was more likely than not a motivating factor or the determinative cause of his termination.⁵¹

Morgenfruh attempts to undermine Larson's credibility by pointing out that it provides more reasons for his dismissal in its answers to interrogatories than Morgenfruh was provided with on the day he was fired.⁵² But providing *additional* reasons is not the same as providing *inconsistent* reasons. Morgenfruh does not dispute his underperformance on the TalentKeepers metrics, and he does not provide any other evidence to discredit Larson's proffered reasons.

Morgenfruh's attempts to demonstrate discrimination are also unpersuasive. His Title VII claim is based on his allegations that Larson fired him to advance an agenda of increasing the number of women employed there.⁵³ In support, he cites four pieces of evidence: (1) Larson had a women's career-development group;

---

⁵⁰ *See* Def. Br. in Supp. of Its Mot. for Summ. J. 1, ECF No. 34.

⁵¹ *See Fasold v. Justice*, 409 F.3d 178, 185 (3d Cir. 2005).

⁵² *See* Pl. Mem. at 12.

⁵³ *See id.* at 25.

(2) Brenda Nichols expressed her desire to have more women employed at Larson; (3) Larson fired more men than women in 2015; and (4) Morgenfruh's replacement was female.[54] Morgenfruh presents no evidence suggesting that the "Women of LDG" group was anything other than a run-of-the-mill career-support group, and certainly does not demonstrate that it was part of a larger scheme to replace men in the company. Nichols's comments are not relevant because Keith Kuzio, not Nichols, made the decision to fire Morgenfruh.[55] Putting aside the general slipperiness of statistical evidence in cases alleging individual discrimination,[56] the fact that Larson fired more men than women is neither surprising nor illuminating[57] given that Morgenfruh concedes that Larson employed significantly more men than women during that time period. The only remaining evidence Morgenfruh offers is that he was replaced by a woman. In other words, he has offered nothing more than

---

[54] *See id.* at 24–25.

[55] *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks by non-decisionmakers . . . are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

[56] *See Summy-Long v. Pa. State Univ.*, 226 F. Supp. 3d 371, 396 (M.D. Pa. 2016).

[57] I pause to reflect on the unhelpful nature of the cited figures. Morgenfruh's brief states that "Defendant's termination ratio of males to females was 87% to 13%." Pl. Mem. at 25. These numbers appear nowhere in the exhibit cited to support it, which itself draws data only from 2015—no years before or after, notably including the year Morgenfruh was fired. The brief includes no explanation of how the numbers were calculated and provides no follow-up analysis. For instance, what termination ratio would we expect from a nondiscriminating company with Larson's gender composition? How far of a departure could be attributed to random variation? The cursory inclusion of these numbers does little to advance Morgenfruh's cause.

his *prima facie* case. Summary judgment is therefore proper on his gender discrimination claims.[58]

Morgenfruh's ADA claim has little more persuasive force. Morgenfruh attended medical appointments for years without issue. As described above, Larson permitted him to leave early or arrive late as necessary, and he had plenty of unused flexible leave time at the moment of his termination. Morgenfruh continued attending doctor's appointments in 2017 and was never denied time off. He was even approved for vacation days to extend his Memorial Day weekend a month before he was terminated. The evidence in the record simply does not support the conclusion that Larson's decision was based on Morgenfruh's medical leave.

Morgenfruh makes a last-ditch effort to show discrimination by arguing that two nondisabled employees, Rob Gehr and Doug Smith, were treated differently.[59] However, Gehr and Smith were not similarly situated to Morgenfruh because they answered to a different supervisor,[60] worked in different departments,[61] and possessed different qualifications and duties.[62] Further, the gap between Larson's

---

[58] *See Stahlnecker*, 2009 WL 661927 at *7.

[59] *See* Pl. Mem. at 13.

[60] Kuzio Aff. ¶¶ 6–7, ECF No. 48 #1.

[61] *Id.* ¶¶ 3, 6–7.

[62] *Id.* ¶ 8. *See Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 503 (M.D. Pa. 2014) ("Similarly situated employees are those who have 'dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" (quoting *Opsatnik v. Norfolk S. Corp.*, 335 Fed. Appx. 220, 223 (3d Cir. 2009)).

treatment of Morgenfruh and Gehr was not as wide as Morgenfruh suggests. While he was permitted to keep his job, Gehr was also subject to harsh penalties for lackluster performance, including a title demotion and financial penalties.[63] And to the extent there was a difference in treatment between Morgenfruh and Smith, Morgenfruh himself explained it—Smith was the "golden child" referral of an influential board member.[64] Whatever the wisdom of such favorable treatment, it is not indicative of disability discrimination. Summary judgment is therefore proper on Morgenfruh's disability discrimination claims.

## C. FMLA

The FMLA provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of his position."[65] It is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA.[66] An employer's failure to advise an employee of his rights under the FMLA may constitute interference with the employee's rights.[67] To establish a failure-to-advise claim, the employee must show

---

[63] Pl. Dep. 175:19–176:12.

[64] *Id.* 188:10–12.

[65] 29 U.S.C. § 2612(a)(1)(D); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

[66] 29 U.S.C. § 2615(a)(1); *see also Callison*, 430 F.3d at 119.

[67] *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142–43 (3d Cir. 2004).

that he was entitled to FMLA benefits, the employer interfered with them, and the employee was prejudiced by the failure to advise.[68] Prejudice must be shown by "establishing that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury."[69]

Here, Morgenfruh has not demonstrated prejudice. According to his own testimony, he would have used FMLA leave not to recover from any of his claimed ailments, but for "mental health time."[70] There is no evidence in the record that any additional time off was medically necessary—as discussed above, Morgenfruh already had a flexible work schedule that allowed him to attend all of his appointments. This alone is dispositive.[71] But, furthermore, he was familiar with the FMLA through his position as the head of Larson's human resources department.[72] While he may not have dealt with it on a daily basis, he was fully capable of

---

[68] *See Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 637–38 (M.D. Pa. 2006).

[69] *Id.* at 638.

[70] Pl. Dep. 315:24–316:5.

[71] *See Matthews v. N.J. Inst. of Tech.*, 772 F. Supp. 2d 647, 658 (D.N.J. 2011) (granting summary judgment due to lack of prejudice where the "evidence demonstrate[d] that Plaintiff took paid leave for occasional doctor's visits" and there was "no evidence to support an inference that Plaintiff sought . . . any leave in addition to what he took or that any additional leave was medically necessary"); *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F. Supp. 3d 744, 758–59 (W.D. Pa. 2016) (finding employee was not prejudiced by taking paid time off instead of FMLA leave where her termination was not causally connected to her time off).

[72] *See, e.g.*, Rogers Aff. ¶ 2 (stating that Morgenfruh assisted with a complex FMLA matter in March 2017).

exercising his rights with or without notice from Larson.⁷³ Accordingly, I grant summary judgment to Larson on Morgenfruh's FMLA claim.

## III. CONCLUSION

Summary judgment is hereby GRANTED to Defendant on all counts.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

⁷³ *See Johnson v. Dollar General*, 880 F. Supp. 2d 967, 986 (N.D. Iowa 2012) (granting summary judgment on failure-to-advise claim where employee had received employee handbook, received training, and seen posters addressing company's FMLA policies); *Crain v. Schlumberger Tech. Co.*, 187 F. Supp. 3d 732, 740–41 (E.D. La. 2016) (granting summary judgment where plaintiff was aware of his FMLA rights).